1  **NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
2  Alex Tomasevic (SBN 245598)
225 Broadway, 19th Floor
3  San Diego, California 92101
Tel: (619) 325-0492
4  Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
5  Email: atomasevic@nicholaslaw.org

6  **WINTERS & ASSOCIATES**
Jack B. Winters, Jr. (SBN 82998)
7  Georg M. Capielo (SBN 245491)
Sarah Ball (SBN 292337)
8  8489 La Mesa Boulevard
La Mesa, California 91942
9  Tel: (619) 234-9000
Fax: (619) 750-0413
10  Email: jackbwinters@earthlink.net
Email: gcapielo@einsurelaw.com
11  Email: sball@einsurelaw.com

12  Attorneys for Plaintiff SUSAN A. PITT,
Individually, as Successor-In-Interest to MICHAEL A.
13  PITT, Decedent, on Behalf of the Estate of
MICHAEL A. PITT, and on Behalf of the Class

14

15              **UNITED STATES DISTRICT COURT**

16            **SOUTHERN DISTRICT OF CALIFORNIA**

17  | SUSAN A. PITT, Individually, as Successor-In-Interest to MICHAEL A. PITT, Decedent, on Behalf of the Estate of MICHAEL A. PITT, and on Behalf of the Class, | Case No.: **'20 CV0694 BAS JLB** |
|---|---|
| | **CLASS ACTION COMPLAINT FOR:** |

18

19                                            **(1)  DECLARATORY RELIEF OR JUDGMENT (CAL CIV CODE §§ 1060, ET SEQ.);**

20                  Plaintiff,

21          vs.                                **(2)  DECLARATORY RELIEF OR JUDGMENT (28 U.S.C. 2201, ET SEQ.);**

22  METROPOLITAN TOWER LIFE INSURANCE COMPANY, a Delaware Corporation,

23                                            **(3)  BREACH OF CONTRACT;**

                    Defendant.               **(4)  BAD FAITH;**
24

25                                            **(5)  UNFAIR COMPETITION (BUSINESS AND PROFESSIONS CODE §§ 17200, ET SEQ.)**

26

27                                            **(6)  FINANCIAL ELDER ABUSE**

                                            **DEMAND FOR JURY TRIAL**
28

---

CLASS ACTION COMPLAINT

Plaintiff Susan A. Pitt, Individually, as Successor-In-Interest to Michael A. Pitt, Decedent, on Behalf of the Estate of Michael A. Pitt, and on Behalf of the class and sub-class as defined below, makes the following allegations against Defendant Metropolitan Tower Life Insurance Company, a Delaware Corporation ("TOWER") Defendant as follows:

## I.   NATURE OF THE CASE

1.      Tower refuses to comply with mandatory provisions of the California Insurance Code as well as California common law regulating the lapse and termination of life insurance policies.

2.      Since January 1, 2013, Tower has systematically and purposely failed to provide certain classes of policy owners proper notices of pending lapse or termination.  Tower has refused to provide required grace periods.  It has also failed to notify thousands of policy owners of their right to designate someone to receive critical notices and information regarding life insurance, despite being required to do so on an annual basis.  All of these important safeguards are required by, among other sources, California Insurance Code Sections 10113.71 and 10113.72.[1]  California law requires strict compliance with these safeguards and Tower refuses to comply. *Thomas v. State Farm Ins. Co.*, No. 18-cv-00728-BAS-BGS, 2019 U.S. Dist. LEXIS 213860, at *24 (S.D. Cal. Dec. 10, 2019) (Order by Judge Cynthia Bashant); *Bentley v. United of Omaha Life Ins. Co.*, 371 F. Supp. 3d 723 (C.D. Cal. 2019) (Order by Judge Dolly M. Gee).

3.      As a result, Tower has failed to properly evaluate and pay claims to beneficiaries for policies improperly lapsed or terminated and also failed to properly continue coverage.  Indeed, thousands of policy owners have lost, and continue to lose, the benefit, value and security of their life insurance; have been, and continue

---

[1] Unless otherwise stated, all references to "Section 10113.71" and/or "10113.72" refer to California Insurance Code Sections 10113.71 and/or 10113.72.  Sometimes these will be collectively referred to as the "Statutes."

to be, forced into unnecessary reinstatements; and in many instances have lost all reasonable access to any insurance at all. Ultimately, Defendant has robbed thousands of their beneficiaries of policy benefits. Moreover, since January 1, 2013, Tower has become aware of their failures and has failed to take corrective action.

4.    The injury to Tower's customers and beneficiaries continues today, with policyholders currently paying unnecessary or inflated premiums, or unknowingly suffering under improper forced "reinstatements" which diminish the value of the policies. And there are numerous policyholders whom Tower told have no insurance, but whose policies are, unbeknownst to them, actually still in force.

5.    The mandates of California law and the California Insurance Code were established to protect Californians and others, primarily seniors and the ill. These Statutes were designed to prevent or lessen the possibility of unintended or uninformed loss of valuable and necessary life insurance for just one missed payment or resulting from a policyholders' physical or mental infirmity. The Statutes were written to codify existing law regarding lapse and termination of life insurance, which required strict compliance with applicable law and policy provisions before termination takes effect. The Statutes were also intended to standardize the procedures used in all life insurance when a policyholder misses a premium payment and when an insurer attempts to apply provisions of the policy that allow for lapse and termination. These rules are also consistent with the strong public policy to give all policy owners and insureds mechanisms to allow for secondary notices of lapse and termination and overall to prevent unintended forfeitures.

6.    These Statutes were also designed specifically to deal with the unique nature of life insurance. When a potential claim for benefits arises, the policy owner and party responsible for payment of premiums is often the insured, and due to their death, is no longer available to explain the circumstances related to any potential lapse or termination of coverage. The Legislature also recognized that the beneficiary is often unaware of the circumstances related to any lapse of coverage. Rather, the

insurer is fully in control of the documentation and requirements for termination of coverage.   As such, California requires strict compliance with all statutory and contractual provisions governing termination of an otherwise in-force policy regardless of the nonpayment of premium.  In other words, no lapse or termination for failure to pay a premium is effective, and the policy remains in force even if premiums are unpaid, unless and until all statutory and contractual provisions are satisfied.

7.     Plaintiff and her late husband are victims of Tower's failures.  Plaintiff, on behalf of herself and her husband's Estate, brings this action to recover for the injuries and damages resulting from these violations not only in her individual capacity, but also on behalf of the numerous California policyholders and beneficiaries who have also been denied and continued to be denied the benefits of California law.  In addition to an award of policy benefits, Plaintiff also requests injunctive relief intended to ensure Tower's future compliance with these important consumer safeguards and to prevent the ongoing violation of these important statutes.

## II.   **PARTIES**

8.     Plaintiff Susan A. Pitt is an individual and widow of the insured: Michael A. Pitt.  Plaintiff is and has been a resident and citizen of California since 2014 and she had informed Tower of that before her husband's death and before making a claim for insurance benefits.   At all relevant times, Plaintiff Susan A. Pitt has been the sole express beneficiary of the subject policy. At all times since 2014 Plaintiff has lived in California, owned property in California, and communicated with Tower from within California and, upon information and belief, with Tower employees based out of or working in California or otherwise specifically tasked with dealing with California residents or policies.  Plaintiff has paid taxes in the State of California and has had no relevant contact with Defendant relative to the subject policy other than from within California.

9.     Michael A. Pitt was Susan's husband.  He died in California, as a California resident and citizen, on May 23, 2018. He had been a California resident and citizen since 2014 and had informed Tower of that before his death.  At all relevant times, Michael A. Pitt was the sole named policy owner and the sole named "insured" under the terms of the policy.  Tower At all times since 2014, Plaintiff has lived in California, owned property in California and communicated with Tower from within California and, upon information and belief, with Tower employees based out of or working in California or otherwise specifically tasked with dealing with California residents or policies.  Premiums were paid from California as the policy renewed repeatedly after Plaintiff and her husband changed their residency.  At various times since January 1st, 2013 until his death, Mr. Pitt, the insured, was physically present in the state of California.  Plaintiff has paid taxes in the State of California and has had no relevant contact with Defendant relative to the subject policy other than from within California.

10.    Plaintiff pursues these claims and causes of action individually, on her own behalf as the sole beneficiary of the subject Policy; as Executor of the Estate of Michael A. Pitt pursuant to California Code of Civil Procedure Sections 377.30, *et seq.*; as Decedent's successor-in-interest in compliance with California Code of Civil Procedure Section 377.32; and as a class representative.   Filed herewith and incorporated here by reference is Plaintiff's Declaration pursuant to California Code of Civil Procedure Section 377.32.  Plaintiff pursues these claims to the extent they are not held by Mr. Pitt.  For purposes of this litigation, the Estate of Michael A. Pitt is considered a citizen of the state of California.  In each of these capacities, Ms. Susan A. Pitt also pursues these claims on behalf of all others similarly situated.  The Estate of Michael A. Pitt retains legal and/or equitable rights relative to the existence of the subject policy.

11.    Defendant TOWER is a Delaware Corporation, engaged in business involving the sale and administration of life insurance.  TOWER is another part of

MetLife's NAIC Group 0241 and common tax group, and is another wholly-owned and wholly-controlled subsidiary of defendant MetLife, Inc., which MetLife, Inc. refers to as another one of its "principal insurance subsidiaries."  MetLife tells the public and customers that a life insurance policy that may have been originally issued on a TOWER form or contract is nonetheless a "MetLife life insurance policy" that, today, "remain[s] with MetLife."

12.    TOWER is also licensed to conduct business and does business throughout the state of California.   TOWER is licensed/chartered to be a life insurance carrier in California and is subject to regulation by California authorities, including the California Department of Insurance.  Plaintiff is informed and believes that TOWER at some time prior to the filing of this action merged with, absorbed, or otherwise assumed responsibility for Policies sold by GALIC, including the Policy sold to Mr. PITT.  Plaintiff is informed and believes that GALIC may be sharing and utilizing TOWER's license to continue to do business in the State of California.

### III.    JURISDICTION AND VENUE

13.    This Court has original jurisdiction pursuant to 28 U.S.C. § 1332, including under the Class Action Fairness Act.  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000, and is between citizens of different States.  Also, the matter or controversy is a putative class action with over 100 class members and with over $5 million in controversy.

14.    Venue is proper in the Southern District of California pursuant to 28 U.S.C. Section 1391(b) through (d), because  Defendant is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District; does substantial business in this District; and is subject to personal jurisdiction in this District.  The business and activities which are the subject of this litigation are being conducted throughout the State in each and every District on a uniform and consistent basis.  Plaintiff is informed and believes that Tower itself treats all policyholders, beneficiaries, agents, producers or others living or located in

California as being regulated and governed by the same uniform state-wide Tower policies and procedures, with no distinction as to any specific District.  Tower's business within this District is substantial and consists of the marketing, sale, delivery, maintenance, and administration of thousands of life insurance policies representing billions of dollars in benefits, as well as the maintenance of dozens of sales and agent offices.

15.    Tower advertises throughout California, including throughout this District, and conducts significant sales and related business activities in California and in this District in general, as well as specifically regarding the marketing, sale, and administration of life insurance policies.

16.    Plaintiff is informed and believes that Tower, consistent with industry standards for insurance companies doing business in numerous jurisdictions, utilizes the addresses of policy holders as a determining factor in the company's determination of what law to apply to the administration of the policy.  As such, Tower treats policy holders residing in California as requiring the application of California law and Tower, furthermore, acknowledges its capacity to be sued in California Districts in which it is involved in business.  Tower has developed and continues to develop and apply not only marketing strategies as well as administration strategies specifically in relation to actual or potential policy holders residing in California, which constitutes one of Tower's primarily locations for the sale and administration of its insurance products.  Tower's wrongful conduct has occurred in this District and throughout the State of California.  Since 2014, the wrongful conduct alleged throughout this Complaint has occurred within this state.

17.    Tower may claim that its insureds and beneficiaries, like Ms. Pitt, must travel to New York to sue Tower for their benefits.  However, the subject policy in no way references New York (or any particular jurisdiction for that matter) as the supposedly proper venue.  Rather, the subject policy specifically allows for potential venue in any and all states.  At no time did Plaintiff or her fellow class members

CLASS ACTION COMPLAINT

accept or agree to resolve disputes arising from such policies in New York. Rather, the Policy reasonably contemplated that suits on policies would involve resolution in the states where the policy owners resided, the insured lived, the insured risk arose, and/or the beneficiary resided—whatever state(s) that may be.

18.     To the extent that Tower altered, transferred, merged, and/or modified the ownership or the identity of the insurer for the Policy, that alteration, transfer and/or modification occurred after 2014 and occurred within California not only as to the Plaintiff's policy, but also as to all policies purportedly altered, merged, modified or transferred.

19.     Plaintiff and the insured were, at all times relevant, residents of the County of San Diego.

## IV.     THE ENACTMENT AND APPLICABILITY OF INSURANCE CODE SECTIONS 10113.71 AND 10113.72

20.     In 2012, after extensive and open hearings and public consideration, including with Tower all other major insurance companies doing business in California, the California Legislature enacted Insurance Code Sections 10113.71 and 10113.72, which instituted procedural requirements for the termination and lapse of life insurance policies. The Statutes were written to avoid unintended forfeitures of life insurance policies primarily being suffered by the elderly and the ill. The Legislature found that there was a significant problem in California with the elderly abruptly losing insurance because they happened to miss a premium payment despite having faithfully and timely paid for many years.

21.     Sections 10113.71 and 10113.72, in addition to other statutory provisions and laws in effect as of January 1, 2013, mandate that every life insurance policy in or governed by California law, including policies that have issued, been delivered, renewed, reinstated, converted or otherwise become subject to the jurisdiction of California, shall contain a 60-day grace period and that the policy shall remain in force during the grace period. Cal. Ins. Code § 10113.71(a).

22.     The provisions further require that before an individual life insurance policy governed by California law is lapsed or terminated for nonpayment of premium, a 30-day written notice of pending lapse or termination must be mailed not only to the policyholder, but also to any additional person who had been designated to receive such notice, as well as any person having any interest in the policy.  Cal. Ins. Code § 10113.72(c).

23.     The provisions also mandate that the insurer, on an annual basis, as well as during any application process, notify the policy owner of his or her right to designate additional notice recipients.

24.     Finally, the statutes mandate that no lapse or termination is effective unless all of the provisions are strictly complied with.

25.     The provisions are applicable individually and severally to all life insurance policies governed by California law.

26.     More specifically, Section 10113.71 reads as follows:

### § 10113.71 Grace Period; Notice of pending lapse and termination of policy; Mailing requirement

(a)  Every life insurance policy issued or delivered in this state shall contain a provision for a grace period of not less than 60 days from the premium due date. The 60-day grace period shall not run concurrently with the period of paid coverage. The provision shall provide that the policy shall remain in force during the grace period.

(b) (1) A notice of pending lapse and termination of a life insurance policy shall not be effective unless mailed by the insurer to the named policy owner, a designee named pursuant to Section 10113.72 for an individual life insurance policy, and a known assignee or other person having an interest in the individual life insurance policy, at least 30 days prior to the effective date of termination if termination is for nonpayment of premium.

(2) This subdivision shall not apply to nonrenewal.

(3) Notice shall be given to the policy owner and to the designee by first-class United Sates mail within 30 days after a premium is due and unpaid.  However, notices made to assignees pursuant to this section may be done electronically with the consent of the assignee.

(c) For purposes of this section, a life insurance policy includes, but is not limited to, an individual life insurance policy and a group life insurance policy, except where otherwise provided.

Next, Section 10113.72 says:

**§ 10113.72 Right to designate person to receive notice of lapse or termination of policy for nonpayment of premium; Right to change designation; Notice of lapse or termination**

(a) An individual life insurance policy shall not be issued or delivered in this state until the applicant has been given the right to designate at least one person, in addition to the applicant, to receive notice of lapse or termination of a policy for nonpayment of premium. The insurer shall provide each applicant with a form to make the designation. That form shall provide the opportunity for the applicant to submit the name, address, and telephone number    of    at    least    one    person,    in

addition to the applicant, who is to receive notice of lapse or termination of the policy for nonpayment of premium.

(b) The insurer shall notify the policy owner annually of the right to change the written designation or designate one or more persons. The policy owner may change the designation more often if he or she chooses to do so.

(c) No individual life insurance policy shall lapse or be terminated for nonpayment of premium unless the insurer, at least 30 days prior to the effective date of the lapse or termination, gives notice to the policy owner and to the person or persons designated pursuant to subdivision (a), at the address provided by the policy owner for purposes of receiving notice of lapse or termination. Notice shall be given by first-class United States mail within 30 days after a premium is due and unpaid.

27.     These Statutes are regulatory in nature and contain no grandfather provisions limiting their application only to policies first issued or delivered after January 1, 2013.  Rather, they apply to all policies still *in existence* as of January 1, 2013.

28.     These provisions were intended to standardize the procedures and notices used by life insurers to terminate policies.  The Statutes further codified long-standing California law and policy regarding the State's desire to protect

policyholders and beneficiaries from loss of insurance resulting from the failure, *e.g.*, to pay a single premium after years of timely payments. These provisions, individually and collectively, were intended to apply to policies in force as of January 1, 2013 and thereafter, including those policies that would come within the jurisdiction of the state and regardless of the date of any original issuance.

29.     The principal supporters of the legislation were groups representing the elderly and the retired as well as constituents dealing with health concerns. There was no substantive opposition to the legislation during its drafting.  Rather, the insurance industry supported these new provisions and accepted that the goal and purpose of the legislation was legitimate and in the best interest of their policyholders and beneficiaries.  There was never a public or private dispute that the enactment of provisions codifying a contractual right to a 30-day written notice, a 60-day grace period, and an annual right to designate was within the proper exercise of California's regulatory authority.  Furthermore, after repeated review, it was determined that enactment of these provisions would have no substantial fiscal or economic ill effect. It was determined that these Statutes support a strong public policy to safeguard consumers' investment in life insurance, and the safety blanket that insurance provides.

## V.     TOWER'S VIOLATIONS OF LAW

30.     In 2012, Defendant was made fully aware of the drafting and enactment of these provisions.  And through their own lobbying groups and regulatory advisors, Defendant understood how and in what fashion the statutes would apply.  Prior to enactment, Defendant made no attempt to object to the enactment of the Statutes.

31.     Tower was responsible for providing advice and counsel to all its companies and affiliated companies regarding managing and implementing the Statutes.  For example, Tower had an obligation to provide and instruct its claims and underwriting personnel, including those technically employed by its wholly-owned

and wholly-controlled subsidiaries, as to the Statutes and how to deal with policyholders, beneficiaries, and other claimants in light of the Statutes.

32.    Despite early knowledge of the Statutes and their mandates, since January 1, 2013, Defendant has failed to comply with the Statutes.

33.    Tower's failure to comply with these provisions has resulted in, amongst other impacts, the improper lapse, termination, and/or forced reinstatement of policies, the loss of the capacity of policyholders to be insured, the denial of actual claims, and the loss of millions, or perhaps billions, in insurance benefits.  Plaintiff, as a beneficiary and as a representative of the Estate of Mr. Pitt, has suffered, and continues to suffer, various forms of injury and loss, including injury from an improper lapse, improper requirement of reinstatement and termination, and from Defendant's failure to reinstate Mr. Pitt's coverage or otherwise pay the benefit due.

34.    Plaintiff is informed and believes that the failure of Defendant to comply with these statutes as well as the resulting injuries and damages continue to this day for many Californians.

## VI.    PLAINTIFF'S POLICY, LAPSE, TERMINATION, REINSTATEMENT, AND DENIAL OF HER CLAIM

35.    In October 2003, Michael A. Pitt purchased a $2,000,000 term life insurance policy (the "Policy" or "Subject Policy") from Tower for the protection of his family.   Mr. Pitt was Plaintiff's husband and he named Plaintiff as the sole beneficiary of the policy. The premiums paid in the purchase and maintenance of the policy were from the assets of the marriage of Plaintiff and Mr. Pitt.

36.    A copy of what Plaintiff believes is a full and correct copy of the Policy is attached as Exhibit "A."   The Policy does not attempt to choose any one state for purposes of venue or choice-of-law.  Tower could have chosen a particular state's law to apply, but it did not. Rather, the Policy acknowledges that it must comply with or be read in harmony with any state's law that *may* apply or "govern."   These policy terms acknowledge the industry standard that absent an express contractual provision

to the contrary, life insurance policies will generally be governed at a particular time by the laws of the jurisdiction of the situs of the risk, the location and residence of the insured, or the location and residence of the policy owner from which premiums were paid. At all relevant times, Tower in fact followed the industry standard and treated policies similar to the subject policy the same, recognizing that the laws of the state of the insured's or the risk's location, or the residency of the policy owner, would govern.

37.    Further, at all times since 2014, the laws of California applied to the Subject Policy because California alone has an interest in the administration of this and similar policies regarding the lapse and termination of such policies. To the extent that California law conflicts with any other law, California law has the superior interest. The public purpose of the State of California expressed through the enactment of these provisions was to govern and regulate the lapse and termination of insurance policies arising from non-payment of premiums which occur in relationship to the administration of insurance governed by the State and intended to protect the residents and citizens of the State.

38.    At all relevant times, the Policy incorporated applicable law found in the California Insurance Code consistent with the provisions of California Insurance Code Section 41.[2] The provisions of the Policy requiring compliance with the laws of the "applicable" state are consistent with California law as it existed during all relevant times stated herein. As of the date of enactment, these provisions were individually and collectively read into every in-force life insurance policy within the jurisdiction of California and thereafter were read into every in-force life insurance policy which thereafter came within the jurisdiction of California.

39.    The Policy is described as a "Level Benefit Term Life Insurance Annually Renewable to Age 95." The face amount of the policy is $2,000,000 and

---

[2] Section 41 says that "[a]ll insurance in this State is governed by the provisions of this code," *i.e.*, the California Insurance Code.

the annual renewal premium owed was guaranteed for 20 years from the date of issuance.  The "total Premium Payable at Annual Intervals" was $7,290.00.  The "Initial Term" of the policy was one year and ran until October 6, 2004, after which time the Policy renewed each year.  The Policy set forth the premiums due for renewal of the policy each year between issuance until the insured reached the age of 95.

40.    The Policy, as originally issued, provided a "grace period" of 31 days and stated in pertinent part: "Your premium is in default if you do not pay it on or before its due date. We will allow a grace period of 31 days after the premium due date for payment of each premium except the first. A notice will be sent to you, at your last known address and any assignee of record. During this period no interest will be charged on the premium due, and the policy will remain in force. If the insured dies during the grace period, the amount of any unpaid premium due through the date of death will be deducted from the proceeds of the policy.  If any premium remains unpaid after the grace period, this policy will cease and become void."  See Exhibit "A."  The policy had a Date of Issue of October 6, 2003. The Policy, at Section 3, specified that it was to renew each year without proof of insurability and that each "renewal will be a term of one year and will begin when the preceding term ends."

41.    In 2003, when the Policy was initially issued, Plaintiff and Mr. Pitt lived in Illinois.  In 2014 the Pitts moved to California and became permanent residents and citizens of California and began to make premium payments to Tower from California.

42.    As of at least 2014, when the Policy was renewed, and in 2015 and in 2016, and through today, the laws and regulations of California governed the Policy.

43.    In 2014, Mr. Pitt notified Tower in writing of his new residence and mailing address.  Thereafter, through 2014 and through his death in 2018, Mr. Pitt and Plaintiff communicated in writing with and paid premiums to Tower from California.  From 2014 until the present, neither Mr. Pitt, Plaintiff, nor Tower undertook any transactions with respect to this policy related to or in the State of

Illinois.  In any event, at no time did any of the laws of California conflict with the Policy with the exception that the Policy as originally issued contained a 31-day grace period, whereas as of January 1, 2013, all policies governed by California law would require a 60-day grace period.  Utilization of a 30-day written notice provision or an annual right to designate did not conflict with any term of the Policy, but rather, was consistent with the Policy obligation to give written notice prior to lapse.

44.     From 2014 through the present, Plaintiff and Mr. Pitt lived and owned property in California and have in all ways maintained the Policy and interacted with Defendant from within California.  As of Plaintiff's and Mr. Pitt's change of residence and citizenship to California, Illinois ceased having any interest in the subject Policy, including no interest in the procedures and regulations regarding how the Policy was maintained, lapsed, or terminated.  It is undisputed that the Estate of Mr. Pitt is governed today by California law. In short, at all times from at least 2014, the Policy and the rights of the parties under the Policy were governed by the laws of California.  Upon information and belief, Tower itself deemed other California Insurance Code requirements to be applicable to the Subject Policy once the Pitts came to California, except the Statutes.

45.     Despite the application of California law, at no time during 2014, 2015, 2016, or 2017 was Mr. Pitt advised in any fashion of his right to designate another recipient of important policy notices, of his right to a 30-day notice prior to any effective lapse or termination, or that his policy contained a 60-day grace period.  Rather, at various times, Defendant misstated the actual form and type of notice required by law and the terms of the policy, and misinformed Plaintiff and Mr. Pitt about the actual grace period in effect. Defendant also withheld and concealed from Plaintiff and Mr. Pitt the right to designate and Defendant's previous failure to comply with those provisions.  Plaintiff is informed and believes that these failures were part of a general business practice of Tower of ignoring and misapplying Sections 10113.71 and 10113.72.

46.     Plaintiff is further informed and believes that irrespective of the application of the provisions of Sections 10113.71 and 10113.72, Tower systematically failed to comply with the express terms of the Policy promising a default notice prior to terminating the policy at the end of the contractual 31-day grace period.

47.     In January of 2016, after making premium payments consistently for more than 12 years, Plaintiff believes Mr. Pitt may have inadvertently missed the one payment due on January 6, 2016. At this time, Mr. Pitt was 67 years old and had begun to suffer from a progressive medical condition which would soon take his life. Prior to this time, Tower customarily provided written notices of premiums due.  But Plaintiff has no record of her or her husband receiving such notices for 2016.   Prior to the filing of this suit, Plaintiff requested that Tower provide such information, but Tower has produced no evidence of any mailings to Mr. Pitt preceding the January 2016 due date.  As such, Plaintiff is informed and believes that no notice was mailed to Mr. Pitt prior to the January due date.  Had Tower had any proof of such mailing, such proof should have been produced prior to the denial of the claim.

48.     On or about February 7, 2016, Tower advised that it had terminated the Policy for non-payment of premium.   Internally, and as verified in subsequent correspondence to Plaintiff and Mr. Pitt, Defendant treated the Policy as no longer being in force as of February 7, 2016, and as having lapsed on January 6, 2016.  Mr. Pitt made requests for reinstatement and advised that he had not received proper notice, but Tower refused to reinstate or reaffirm coverage. At all times, Mr. Pitt desired to continue coverage, but due to his health condition was unable to effectuate any replacement coverage.  Had Mr. Pitt died after February 7, 2016, Plaintiff is informed and believes that any claim for benefits under the Policy would have been denied on the grounds the Policy was not in force and had been terminated prior to the insured's death.

49.     Prior to February 7, 2016, no Defendant had, in any fashion, complied with or attempted to comply with the provisions of Sections 10113.71 or 10113.72 regarding Plaintiff's policy.  Defendant had not provided any notice of pending lapse or termination.  No notice was provided either for the lapse of the policy on January 6, 2016 or the termination of the Policy on February 7, 2016.  No one had honored or given a 60-day grace period as required by Section 10113.71(a).  Rather, Tower purportedly terminated the policy half way through the mandatory 60-day grace period. This termination not only violated the terms of the California Insurance Code, but also constituted a material breach of the contract.

50.     Prior to February 7, 2016, Defendant also violated Section 10113.72 by failing to provide notice of a right to designate an alternative notice recipient.   Due to each and every violation of these Statutes, the lapse and termination of the Policy was void and ineffective.  Defendant failed to substantially, let alone strictly, comply with any of the mandates of Sections 10113.71 or 10113.72.  As such, the Policy remained in force through Mr. Pitt's death and is currently in full force.

51.     Defendant also failed to comply with the express terms of their own Policy.  Irrespective of the requirements of Sections 10113.71 and 10113.72, the Policy expressly required written notice before any lapse or termination.   No Defendant strictly or substantially complied with the express provisions of the Policy. As such, the Policy remained in force through Mr. Pitt's death and is currently in full force and subject to payment to Plaintiff.  And because the policy was wrongfully lapsed and terminated, Plaintiff's decedent was denied the benefit of the presence of such insurance during his life.

52.     Each of Defendant's violations were material violations of law and material breaches of the Policy, thereby excusing any further performance by Mr. Pitt of tendering premiums to maintain the Policy in force or imposing any requirements or conditions on Plaintiff as a beneficiary. Each of Defendant's breaches and failures excused Mr. Pitt from any obligation to seek or accept any form of reinstatement.

Tower was in contractual breach and remained in breach of the Policy at all times from at least February 7, 2016, until Mr. Pitt's death. As a result of each and every violation, there was harm and injury to Mr. Pitt as well as, ultimately, Plaintiff.

53. Defendant will claim that sometime on or after February 7, 2016, Mr. Pitt received a "Special Courtesy Offer" from Tower advising that the policy had already lapsed and was terminated. The manner and mode of this transmission is unknown at this time. If sent at all, this notice nonetheless was erroneous. It inaccurately advised Mr. Pitt that the Policy had lapsed on January 6, 2016, when in fact it had not lapsed or terminated at all. This notice inaccurately advised Mr. Pitt that the grace period had expired, even though the mandated 60-day grace period had not yet expired. These notices were ineffective and did not satisfy Sections 10113.71 or 10113.72.

54. The Special Courtesy Offer also violated the terms of the Policy and purported to act as some form of modification of the Policy. The Special Courtesy Offer did not explain the full ramifications of accepting the Offer. Accepting the Offer would have modified the Policy and required Mr. PITT to pay premiums for a period of time when—according to Tower—there was no insurance in effect. Acceptance of the Special Courtesy Offer would have been considered by Defendant as a "reinstatement" of the Policy, thus granting Tower certain rights or benefits it would not normally be entitled to. For instance, pursuant to Insurance Code Section 10113.5(a), upon the acceptance of the Special Courtesy Offer, Tower would have gained the right to contest payment of any policy benefits for a period of two years. As of 2016, the Policy had been in force for more than two years and thus any claim for benefits would not have been subject to any right to contest payment. Tower never explained the effect of accepting the Special Courtesy Offer to Plaintiffs. This process of offering a "Special Courtesy Offer" was a process uniformly deployed to all class members and policy owners during this time. The process was fraudulent and concealed from Mr. Pitt and others the actual potential legal effect of

"reinstating" a policy that had not in fact been legally lapsed or terminated. Plaintiff is informed and believes that Defendant continues to utilize this deceptive practice in dealings with both policy holders as well as beneficiaries.

55.     Defendant's Special Courtesy Offer, stating that Mr. Pitt could reinstate the policy if his premium was paid by February 27, 2016, was also parol to the terms of the Policy and did not excuse or satisfy any mandatory provisions of the Policy or the law. At no time was Mr. Pitt contractually or otherwise under any duty to accept such offer. Had Mr. Pitt accepted the Courtesy Offer, the reinstated policy would have been of lesser value and worth.

56.     Tower demanded that the Pitts accept the Special Courtesy Offer by February 27, 2016. Despite a request for all documentation regarding any communications between Tower and Mr. Pitt, Tower has provided no proof of mailing or any documentation concerning the Special Courtesy offer. Therefore, it is uncertain when the Special Courtesy Offer was purportedly mailed and uncertain when or whether it was received and/or reviewed by Mr. Pitt.

57.     On or about March 15, 2016, Tower purportedly mailed another letter to Mr. Pitt. This letter advised that the Policy had lapsed and was "now without value." The letter stated that should Mr. Pitt wish to reinstate his insurance, he would be required to complete an Application for Reinstatement. This formal reinstatement required Mr. Pitt to represent his health condition, which during this period of time, was uncertain and subject to ongoing medical evaluation. In fact, as of this date, under California law and the terms of the Policy, the Policy had not terminated or lapsed, and as such, reinstatement was not necessary and the Policy had value.

58.     After March 15, 2016, Mr. Pitt tendered the sum of $7,290, the full renewal policy premium due for the year 2016.

59.     And after March 15, 2016, Mr. Pitt submitted an Application for Reinstatement.

60.     On February 10, 2017, Tower rejected Mr. Pitt's application to reinstate the Policy and payment claiming that the Policy "no longer includes a reinstatement provision."  Therefore this policy can not [*sic*] be reinstated." No other basis for rejection of the premiums and reinstatement request was offered.

61.     Prior to his death, Mr. Pitt repeatedly advised that he had not received any Grace Notice required by the terms of the Policy.  Defendant never investigated this assertion and when asked to produce all documentation regarding their communications with Mr. Pitt, they produced no evidence of mailing.

62.     On May 23, 2018, Mr. Pitt died.  On that date, the Policy was still in force and it remains in force today having never been properly and legally terminated. Mr. Pitt had not received 30-day notices of pending lapse or termination. Mr. Pitt had not received notice of the 60-day grace period.  Mr. Pitt had not received a 60-day grace period and the policy had been prematurely and improperly terminated during the statutory grace period.  Nor did Tower provide Mr. Pitt with the opportunity to designate alternate recipients of important notices, nor the annual notices that he had the right to do so.  For all of those reasons, the Policy remained and remains in force, and Tower was and is in material breach of contract, excusing any obligation to tender premiums.

63.     On August 1, 2018, Plaintiff made a formal claim for benefits.

64.     On August 16, 2018, Tower denied Plaintiff's claim for benefits.  The claim was denied on the sole basis that the Policy allegedly terminated and no longer was in force as a result of a non-payment of premium. No other basis for denial of the claim has been offered.

65.     In presenting her claim for benefits, Plaintiff requested a copy of all correspondence and writings relating to Defendant's Policy with Mr. Pitt and Defendant has purportedly produced all such records.   In short:

a.     The records produced by Defendant contain no evidence that Defendant complied with any provisions of California Insurance Code Sections 10113.71 or 10113.72.

b.     The records produced by Defendant contain no evidence that Defendant provided any grace notice as required by the original terms of the Policy.

c.     The records produced by Defendant contain no actual proof of mailing for any correspondence between Defendant and Mr. PITT as required by the law or required by the terms of the Policy.  Plaintiff is informed and believes that Defendant has no proof of mailing any notices to Plaintiff or Mr. Pitt complying with the mandates of the Policy and/or the California Insurance Code.

## VII.   CLASS ACTION ALLEGATIONS

66.     Plaintiff is informed and believes that Defendant has not, since at least January 1, 2013, properly complied with the provisions of Insurance Code Sections 10113.71 and/or 10113.72. Since that time, Defendant has failed and continues to fail to provide these protections to policy owners and their beneficiaries.

67.     Plaintiff contends that the handling of the Policy prior to Mr. Pitt's death was consistent with Defendant's standardized policies and procedures.  Defendant has systematically failed to provide a class of policy owners the protections afforded by Sections 10113.71 and 10113.72.

68.     As a matter of standard policy or standard operating procedure, Defendant has not, since at least January 1, 2013, provided or utilized a contractual 60-day grace period for many insureds.

69.     As a matter of standard policy or standard operating procedure, Defendant has not, since at least January 1, 2013, provided or utilized compliant notices of pending lapse and or termination consistent with the provisions of California law and in particular Sections 10113.71 and 10113.72 for many insureds.

70.     Since at least January 1, 2013, Defendant has caused injury and damage to policy owners, beneficiaries, and persons of interest intended to be protected by Sections 10113.71 and 10113.72 or have otherwise harmed same and will continue to do so into the future unless enjoined or prohibited in some fashion.

71.     Plaintiff brings this action on behalf of all members of the proposed class, and proposed sub-class, as follows:

**The Class:**

> All past, present, and future owners or beneficiaries of Defendant's individual life insurance policies in force on or after January 1, 2013, and governed by Sections 10113.71 and/or 10113.72, where the policies underwent or will undergo lapse, termination, and/or reinstatement without Defendant first providing written notice of and an actual 60-day grace period, a 30-day notice of pending lapse and termination, and/or an annual notice of a right to designate at least one other person to receive notice of lapse or termination of a policy for nonpayment of premium.

Many members of this class were or are "senior citizens" as defined in California Civil Code Section 1761(f), and therefore are entitled to, among other things, treble damages under California Civil Code Section 3345.  Therefore, Plaintiff also seeks to represent the following sub-class:

**The Elder Abuse Sub-Class:**

> All members of the Class defined above who were also 65 years of age or older at the time the policy lapsed or terminated.

72.     Subject to additional information obtained through further investigation and discovery, the foregoing definitions of The Class or Elder Abuse Sub-Class may be expanded or narrowed by amendment or amended complaint or at the time of moving for class certification.  Specifically excluded from the proposed Class is the Judge assigned to this action, and any member of the Judge's immediate family.

73.     Defendant's conduct has imposed a common injury and/or harm on all class members. Defendant has acted, and has refused to act, on grounds generally

1  applicable to the class members, which makes final injunctive relief with respect to

2  each claim as a whole appropriate.

3       74.    Plaintiff will and does faithfully represent, and is a member of the Class,

4  including the elder abuse sub-class.

5       75.    ***Numerosity.***  The members of the Class and sub-class are so numerous

6  that their individual joinder is impracticable.  Plaintiff is informed and believes, and

7  on that basis alleges, that the proposed Class and sub-class each contain hundreds and

8  perhaps thousands of members.  The precise number of members is unknown to

9  Plaintiff.  The true number of members is known or ascertainable by the Defendant,

10  as are their identities.  Thus, Class members may likely be notified of the pendency

11  of this action by first class mail, electronic mail, and/or by published notice.

12       76.    ***Existence and Predominance of Common Questions and Answers of***

13  ***Law and Fact***.  There is a well-defined community of interest in the questions and

14  answers of law and fact involved affecting class members.  The questions and

15  answers of law and fact common to the class and sub-class predominate over

16  questions and answers affecting only individual class members, including, but not

17  limited to, the following:

18            a.    Whether Sections 10113.71 and 10113.72, in whole or in

19            part, apply to Defendant's life insurance policies.

20            b.    Has Defendant violated and continue to violate the

21            provisions of Sections 10113.71 and 10113.72?

22            c.    Is Defendant continuing to refuse to provide the protections

23            affording by the provisions of Sections 10113.71 and 10113.72?

24            d.    Whether Defendant's life insurance policies have been

25            ineffectively lapsed or terminated or subsequently been unnecessarily

26            modified through reinstatement.

27            e.    Whether Defendant is required to provide grace periods,

28            timely and proper written notices of pending lapse or pending

CLASS ACTION COMPLAINT

termination, and to provide policyholders a right to designate as set forth in Section 10113.72.

      f.    Should the Court invalidate improper lapses, terminations, and/or reinstatements of policies that resulted from Defendant's failure to comply with the Insurance Code?

      g.    Should Defendant be required to make payments to beneficiaries of Policies where the insured has died and the policy was lapsed or terminated in violation of Sections 10113.71 or 10113.72?

      h.    Whether Defendant knew or should have known that their conduct was directed to one or more persons aged 65 or older?

77.    ***Typicality.***  Plaintiff's claims are typical of the claims of the members of the Class and sub-class because Plaintiff and each member of the Class and sub-class were victims of the same statutory violations.  Further, Plaintiff's claims are typical of the claims of her fellow Class members, which all arise from the same operative facts involving the Defendant's unlawful violations of Sections 10113.71 and 10113.72.

78.    ***Adequacy of Representation.***  Plaintiff will fairly and adequately protect the interests of the Class and sub-class.  Plaintiff has retained counsel highly experienced in handling class action litigation, including that which involves consumer protection from unfair insurance business practices, and Plaintiff intends to prosecute this action vigorously.  Plaintiff has no interest adverse or antagonistic to that of the Class or sub-class.

79.    ***Superiority***.  A class action is a superior method for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense that would be expended by individual litigation of their claims against Defendant.  It would thus be virtually impossible for Class members, on an individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, even if Class

1   members could afford such individualized litigation, the court system could not.

2   Individualized litigation would create the danger of inconsistent or contradictory

3   judgments arising from the same set of facts.  Individualized litigation would also

4   increase the delay and expense to all parties and the court system from the issues

5   raised by this action.  The class action device provides the benefit of adjudication of

6   these issues in a single proceeding, economies of scale, and comprehensive

7   supervision by a single court, and presents no unusual management difficulties under

8   the circumstances. Moreover, many Class members remain unaware of their rights

9   and without this Class action, would remain unaware of their rights and benefits.

10      80.    In the alternative, the Class and sub-class may also be certified because:

11          (a)    The prosecution of separate actions by individual Class members

12      would create a risk of inconsistent or varying adjudication with respect to

13      individual Class members that would establish incompatible standards of

14      conduct for the Defendant;

15          (b)    The prosecution of separate actions by individual class members

16      would create a risk of adjudications with respect to them that would, as a

17      practical matter, be dispositive of the interests of other Class members not

18      parties to the adjudications, or would substantially impair or impede their

19      ability to protect their interests; and/or

20          (c)    Defendant has acted or refused to act on grounds generally

21      applicable to the Class and sub-class, thereby making appropriate final

22      declaratory and/or injunctive relief with respect to the members of the Class

23      and sub-class as a whole.

24      81.    Unless the Class (including the sub-class) is certified, Defendant will

25   retain monies received because of their conduct taken against the class members and

26   the Plaintiff.  Unless a Class-wide injunction is issued, Defendant will continue to

27   commit the violations alleged and members of the Class and sub-class will continue

28   to be harmed.

82.     Plaintiff knows of no difficulty likely to be encountered in the management of this litigation that would preclude its maintenance as a Class Action. Because the action is brought as a Class Action, the Court need only apply a single set of California laws as they relate to Defendant's violation of Sections 10113.71 and 10113.72.

83.     Plaintiff has incurred, and will incur, expenses for attorney's fees and costs in bringing this action.  These attorney's fees and costs are necessary for the prosecution of this action and will result in a benefit to each of the members of the class and elder abuse sub-class.

## VIII.  <u>FIRST CAUSE OF ACTION</u>

### FOR DECLARATORY JUDGMENT OR RELIEF
#### (CAL CIV. CODE § 1060 *ET SEQ.*)

**(By Plaintiff, individually and on Behalf of
the Estate of Michael A. Pitt and the Class and Sub-Class)**

84.     Plaintiff incorporates by reference each and every allegation contained above.

85.     Plaintiff Pitt, in her individual capacity, as well as in her representative capacity for the Estate of Michael A. Pitt, brings this action individually and on behalf of all members of the class and sub-class.

86.     Under California law, "[a]ny person interested under a written instrument…or under a contract, or who desires a declaration of his or her rights or duties with respect to another…may, in cases of an actual controversy relating to the legal rights and duties of the respective parties," may maintain a complaint or cross complaint "for a declaration of his or her rights and duties."  Furthermore, he or she "may ask for a declaration of rights or duties, either alone, or with other relief, and the court may make a binding declaration of these rights or duties, whether or not further relief is or could be claimed at the time."  Cal. Civ. Code § 1060.

### A.   Basis for Relief

87.   On January 1, 2013, the California Insurance Code was amended by Sections 10113.71 and 10113.72. The provisions of these Statutes were immediately, and thereafter, read into all in-force policies regardless of the date of issuance.  The provisions were further intended to require compliance by all policies that came within the jurisdiction of California including but not limited to policies that renewed or in some fashion continued in force on or after January 1st, 2013.

88.   These statutes and amendments to the California Insurance Code were intended to and do regulate the lapse and termination procedures arising from the nonpayment of premiums which may occur from the date of enactment and thereafter.

89.   The amendments were not intended to relieve or waive a policyholder's continuing obligation to pay premiums but operated to keep the policy in force until the policy was properly lapsed or terminated consistent with the statutory provisions which were incorporated into the terms of the policy by law.  Each of these statutory requirements were intended to stand alone.

90.   Forfeiture provisions for nonpayment of premium for life insurance policies are strictly construed against lapse or termination and California law disfavors forfeiture of insurance. Forfeitures "are often the means of great oppression and injustice" and "the courts should be liberal in construing the transaction in favor of avoiding a forfeiture." *Ins. Co. v. Norton*, 96 U.S. 234, 242 (1978).  "Forfeiture of a policy will be avoided on any reasonable showing."  *Klotz v. Old Line Life Ins. Co. of Amer.,* 955 F. Supp. 1183, 1188 (N.D. Cal. 1996).

### B.   There is an Actual Controversy Requiring a Declaration of Rights and Duties

91.   An actual controversy has arisen and now exists between Plaintiff and all Defendant concerning its respective rights and duties under the California Insurance Code and the Policy.  Plaintiff contends Sections 10113.71 and 10113.72 apply to the Subject Policy as well as all of Defendant's California life insurance

policies in force as of or after January 1, 2013, including any policies that were renewed in California on or after January 1, 2013.   Plaintiff also contends these Statutes govern the manner and procedure in which life insurance policies can legally be lapsed or terminated as of January 1, 2013, and thereafter.   Defendant contends that Sections 10113.71 and 10113.72 do not apply to many categories of their policies, including any policies in existence before January 1, 2013, such as Plaintiff's Policy.

92.   Plaintiff desires a judicial determination of rights and duties, and a declaration or judgment that Sections 10113.71 and 10113.72 applied as of January 1, 2013, to Defendant's California policies in force as of or at any time after January 1, 2013, including the Subject Policy.

93.   A judicial declaration would advise insureds and their beneficiaries like Plaintiff of their rights, and would advise Defendant of its duties to Plaintiff and to Class members concerning policyholders' rights to designate individuals to receive notices of pending lapse and termination and the right to receive notice of, and the ability to properly utilize, the legally required grace period.  A judicial declaration is also necessary to determine the validity of any unnecessary reinstatements obtained, to determine whether policies were legally in force at the times of deaths of insureds, and to determine whether beneficiaries were wrongfully denied payment of benefits under their policies.

## IX.   <u>SECOND CAUSE OF ACTION</u>

**FOR DECLARATORY JUDGMENT OR RELIEF (FEDERAL DECLARATORY JUDGMENT ACT – 28 U.S.C. §§ 2201, *ET SEQ.*)**

**(By Plaintiff, individually and on Behalf of the Estate of Michael A. Pitt and the Class and Sub-Class)**

94.   Plaintiff incorporates by reference each and every allegation contained above.

95.     Plaintiff Pitt, in her individual capacity, as well as in her representative capacity for the Estate of Michael A. Pitt, brings this action individually and on behalf of all members of the class and sub-class.

96.     Under federal law, "[i]n a case of actual controversy within its jurisdiction, … any court of the United States … may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment and shall be reviewable as such."  28 U.S.C. § 2201; Fed. Rule Civ. P. 57.

97.     Here, an actual controversy has arisen and now exists between Plaintiff and all Defendant within this Court's jurisdiction concerning the parties' respective rights, duties, and legal relations under the California Insurance Code and the Policy. Plaintiff contends Sections 10113.71 and 10113.72 apply to the Subject Policy and all of Defendant's California life insurance policies in force as of or after January 1, 2013, including any policies that were renewed in California on or after January 1, 2013.  Plaintiff also contends these Statutes govern the manner and procedure in which life insurance policies can legally be lapsed or terminated as of January 1, 2013, and thereafter.  Defendant contend that Sections 10113.71 and 10113.72 do not apply to many categories of their policies, including any policies in existence before January 1, 2013, such as Plaintiff's Policy.

98.     Plaintiff hereby seeks a judicial determination of rights and duties, and a declaration or judgment that Sections 10113.71 and 10113.72 applied as of January 1, 2013, to Defendant's California policies in force as of or at any time after January 1, 2013, including Plaintiff's Policy.

99.     A judicial declaration would advise insureds and their beneficiaries like Plaintiff of their rights, and would advise Defendant of its duties to Plaintiff and to Class members concerning policyholders' rights to designate individuals to receive notices of pending lapse and termination and the right to receive notice of, and the

ability to properly utilize, the legally required grace period.  A judicial declaration is also necessary to determine the validity of any unnecessary reinstatements obtained, to determine whether policies were legally in force at the times of deaths of insureds, and to determine whether beneficiaries were wrongfully denied payment of benefits under their policies.

## X.   THIRD CAUSE OF ACTION

### BREACH OF CONTRACT

**(By Plaintiff, Individually and on Behalf of
the Estate of Michael A. Pitt and the Class and Sub-Class)**

100.   Plaintiff incorporates by reference each and every allegation contained above.

101.   Defendant breached and continue to breach the express terms of their life insurance policies, including Plaintiff's Policy, as well as the statutory mandates regarding such policies, by, amongst other things:

(a)    Failing to include in such policies and failing to provide a 60-day grace period for purposes of payment of premiums and lapse and termination of coverage for nonpayment of premium;

(b)    Lapsing and/or Terminating policies before expiration of the 60-day grace period;

(c)    Failing to include in such policies and failing to provide accurate 30-day written notice of pending lapse or termination;

(d)    Failing to provide proper notice to policyholders on an annual basis of the policyholders' right to designate individuals to receive notices of pending lapse or termination;

(e)    Lapsing or terminating policies without strictly complying with the terms of the policies;

(f)      Refusing to pay benefits to beneficiaries, despite knowledge and information that Defendant had not strictly complied with the terms of the policies;

(g)      Improperly requiring reinstatement of policies that had not lapsed or terminated and which were not required or were not subject to reinstatement;

(h)      By failing to pay benefits or claims;

(i)      By failing to provide the notices required by the policy; and

(j)      By failing to apply the applicable law to the insurance contract.

102.   Under the terms of this Policy and consistent with laws of both California and Illinois, Plaintiff was entitled to sufficient written notice prior to the effectuation of any lapse or termination for non-payment.  For example, in addition to the protections afforded by Sections 10113.71 and 10113.72, the Policy itself, at Section 2 ("Premiums and Grace Period") promised that Defendant would send a written notice of default before lapsing or terminating the policy.  Tower sent no such notice and, thus, breached the insurance contract by failing to provide that notice.

103.   Tower also breached the express term of the policy where Tower promised to conform the policy and its actions to "the laws of the state which govern this policy" (*i.e.*, California law) and to "amend [the Policy] to conform with such laws."  Exhibit "A," Policy at § 7, THE CONTRACT, "Conformity with Statutes."

104.   Tower also failed to pay the benefits due under these policies and thereby breached the express term of the policy where Tower promised to pay the benefits owed "within two months after receipt of due proof of death."  Exhibit "A," Policy at § 8, PAYMENT OF POLICY BENEFITS.

105.   All of the aforementioned conduct, individually and collectively, constitutes material unexcused breaches of the policies.  To the extent any contractual obligations, duties, or conditions are imposed on policyholders or on beneficiaries, those obligations, duties, and conditions have been waived and/or have been excused due to Defendant's material breaches. After each material breach, each policy owner

1  was thus excused from the further tendering of premiums and from any further

2  performance under the terms of the policy, including but not limited to the acceptance

3  of any offer by Tower of any reinstatement or modification to the policy.

4      106.   Defendant's conduct caused injury upon the false, wrongful and

5  inadequate termination of coverage devaluing the policy and subsequently caused

6  injury in fact through the further denial of an ability to resume coverage, and

7  ultimately in refusing to pay the claim.  Plaintiff and her fellow class members

8  suffered harm through the loss of coverage, the loss of peace of mind related to the

9  existence of coverage, and the capacity to utilize the years of investment in the

10  wrongfully lapsed and terminated policy.

11      107.   To the extent any policyholders and/or beneficiaries have failed to

12  comply with any payment conditions or other conditions for the continuation of

13  insurance, Defendant is estopped to assert such conditions due to their conduct and

14  material breaches. Yet, Defendant has done so with respect to Plaintiff and members

15  of the Class and sub-class.

16      108.   In California, the measure of damage for material breach of a life

17  insurance policy is set as the "sum or sums payable in the manner and at the times as

18  provided in the policy to person entitled thereto."  Cal. Ins. Code § 10111.

19      109.   As a legal and proximate result of the conduct described herein, the class

20  and sub-class have suffered direct and foreseeable economic damages, including loss

21  of policy benefits, and allowed interest under the terms of the policy and the law, in

22  a nature and amount to be proven at the time of trial.

## XI.    FOURTH CAUSE OF ACTION

### BAD FAITH

### (By Plaintiff, Individually)

26      110.   Plaintiff incorporates by reference each and every allegation contained

27  above.

28

111.  At all relevant times, Plaintiff was the wife of the insured and policyholder, the primary express beneficiary of the Policy, and the individual from whom benefits of the Policy have been wrongfully withheld.  Upon Mr. Pitt's death, Plaintiff became contractually entitled to benefits under the Policy and was to be treated as an insured under the express and implied terms of the Policy and the laws of the state of California.  112. Prior to his death, Mr. Pitt held a claim for emotional distress arising from the wrongful conduct of Defendant.  Due to his death, Mr. Pitt is unable to recover damages or compensation for his non-economic injuries associated with Tower's misconduct.113.  At all relevant times, Tower owed Plaintiff and Mr. Pitt an obligation to perform the express and implied obligations imposed by the Policy, to act in good faith, to deal fairly with Mr. Pitt and Plaintiff, and to not interfere with the insured's and Plaintiff's rights to receive the benefits of the Policy.  The obligations and duties described herein have existed from the inception of the Policy and continue through the pendency of this action. By its conduct described above, Tower has materially breached the terms and conditions of the Policy and the statutory mandates of California law by improperly lapsing and terminating the Policy, thereafter refusing to properly advise Plaintiff of her rights and of Tower's duties and responsibilities, failing to promptly pay the subject claim, and delaying payment of the claim.

112.  Specifically, Defendant breached the Policy in 2015 and 2016 by failing to advise Mr. Pitt of his right to designate under Section 10113.72.  Thereafter in 2016, Defendant violated Section 10113.71(a) by terminating the policy on February 7, 2016; 30-days into the required 60-day grace period.  Defendant also materially breached the Policy by failing to provide the required notice of pending lapse as well as the attempted termination.  Defendant further materially breached the Policy by failing to advise Mr. Pitt of these provisions.  Defendant also materially breached the policy by terminating the policy without first providing the required grace notice as required by the express terms of the Policy.

113.   Defendant also violated the terms of the Policy by failing to comply with the provisions of the Policy that required Tower to comply with and utilize the laws of the state governing the Policy.  From 2014 through Mr. Pitt's death and after the denial of the claim, Tower has failed to comply with that term of the Policy and has specifically ignored its obligations.

114.   Plaintiff alleges that when Defendant repudiated and unilaterally terminated the Policy, Defendant was aware the Policy was a valid and enforceable contract and required acknowledgment that the Policy was valid and was not subject to termination of coverage, as asserted by Defendant.

115.   Defendant, at all relevant times and to date, breached the covenant of good faith and fair dealing owed to Plaintiff and Mr. Pitt by failing to comply with the terms of the Policy, by asserting Policy provisions which did not apply to preclude coverage, by failing to completely investigate their attempts to terminate the Policy, by failing to abide by the Policy and the Statutes, by placing Defendant's interests above those of its policyholders, by unreasonably asserting Policy provisions without considering the actual facts and the law, by misrepresenting Policy terms and conditions, by misrepresenting and applying the law, and by failing to comply with proper industry standards and customs regarding lapse or termination of life insurance policies.

116.   Defendant knew, or should have known, prior to January 1, 2013, that California law:  (1) mandated that 60-day grace periods applied to policies in force as of January 1, 2013, regardless of whether the Policy was issued or delivered prior to January 1, 2013; (2) that no lapse or termination is effective unless preceded by timely and proper notices of pending lapse or termination; (3) that notices be sent not only to the policy holder, but also to designees, known assignees, or other persons having an interest in the individual life insurance policy; and (4) that all policyholders annually receive notice of a right to designate said notice recipients.  Defendant know, or should know, that the courts of the state of California are the authority for

interpretation of California statutes and that at all times during all pending claims no California court of law has ruled that Sections 10113.71 and 10113.72 did not apply to policies in force as of January 1, 2013, or that these Sections do not apply to policies issued or delivered prior to January 1, 2013. Despite such knowledge, Tower refused and continues to refuse in bad faith and with no good cause to apply this law to Plaintiff's Policy and continues to deny payment of Plaintiff's benefits.

117. Furthermore, courts have consistently held that the Statutes apply to pre-2013 policies, yet Defendant still, in bad faith, continues to ignore its' duties. *Thomas v. State Farm Ins. Co.*, No. 18-cv-00728-BAS-BGS, 2019 U.S. Dist. LEXIS 213860, at *24 (S.D. Cal. Dec. 10, 2019); *Bentley v. United of Omaha Life Ins. Co.*, 371 F. Supp. 3d 723 (C.D. Cal. 2019).

118. Despite knowledge of the applicability of these provisions to policies issued before January 1, 2013, and the impropriety of its actions, Tower made the conscious decision, ratified by its managerial agents, officers, and directors, to unilaterally terminate the Policy on these improper grounds, denying Mr. Pitt and Plaintiff, his sole beneficiary, the benefits Mr. Pitt bargained for and relied on. Tower now continues this bad faith denial of benefits without proper cause.

119. Tower, by and through its officers and directors and other managerial agents, consciously ignored the application of California law regarding such notices and instituted a business practice and course of conduct designed to intentionally violate such provisions. Knowing these provisions were enacted in California to avoid unintended forfeiture of policies, Tower, by and through its officers, consciously ignored, and continues to consciously ignore, the obligations imposed on Tower to avoid payment of claims and to continue to maintain the practice of encouraging unintended lapses of policies.

120. Defendant's acts all constitute malice, oppression, and fraud. Tower and its officers, directors, and managerial agents have also made repeated intentional misrepresentations and engaged in active concealment, as heretofore discussed, thus

constituting deceit and fraud. In performing these acts, Tower and its officers, directors, and managerial agents participated or ratified active concealment of the rights of insureds with regards to termination of coverage for nonpayment to avoid incurring liabilities and costs associated with compliance with the law. Such conduct was, in fact, malicious, oppressive, and fraudulent, justifying an award of punitive damages against Defendant.

121. Plaintiff has suffered and will continue to suffer injuries, damages, and harm legally caused by Defendant's past and ongoing failure to uphold the terms of the Policy. Plaintiff has also suffered and will continue to suffer consequential economic injuries in a nature and amount to be proven at the time of the trial. These injuries include emotional distress, concern, anger, and worry concerning the loss of benefits. Plaintiff has also been required to retain legal counsel and has and will continue to incur attorney's fees and expenses in the pursuit of the Policy benefits. Defendant's conduct is the legal cause of the need for these expenditures, for which, along with other actual injuries, damages, and future ongoing injuries and damages, Plaintiff seeks compensation in an amount within the jurisdiction of this Court to be proven at the time of trial. Plaintiff thus seeks full reimbursement of all attorney's fees and expenses incurred to obtain the benefits of the Policy.

## XII.   <u>FIFTH CAUSE OF ACTION</u>

### UNFAIR COMPETITION (CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200, *ET SEQ.*)

#### (By Plaintiff, individually and on Behalf of the Estate of Michael A. Pitt, and the Class and Sub-Class)

122. Plaintiff incorporates by reference each and every allegation contained above.

123. Plaintiff brings this claim individually as well as in her representative capacity for the Estate of Michael A. Pitt, and also on behalf of all members of the class and elder abuse sub-class as necessary.

124. California Business and Professions Code Sections 17200, *et. seq.* ("UCL") prohibit any unlawful, unfair, deceptive, or fraudulent business practice.

125. Defendant committed "unlawful" acts under the UCL by violating and continuing to violate Sections 10113.71 and 10113.72, including by failing to afford insureds, including Plaintiff and Mr. Pitt, the requisite 60-day grace period and/or written 30-day notice prior to any lapse or termination, and further, an annual right to designate someone else to also receive notices of pending lapse or termination of coverage. *Thomas v. State Farm Ins. Co.*, No. 18-cv-00728-BAS-BGS, 2019 U.S. Dist. LEXIS 213860, at *24 (S.D. Cal. Dec. 10, 2019); *Bentley v. United of Omaha Life Ins. Co.*, 371 F. Supp. 3d 723 (C.D. Cal. 2019).

126. Plaintiff's policy as well as Policies which have allegedly been lapsed and/or terminated are still in force and are payable or subject to continuation of insurance. Because of Tower's violations of the California Insurance Code, Tower's attempted terminations or lapses of policies like the Pitt policy were illegal and ineffective. The policies, in other words, remain in force and subject to payment of the benefit. Tower's failure to comply with the statutory terms has not effectively terminated any policy, and Plaintiff and her fellow class members all remain in an ongoing valid contractual relationship with Tower.

127. Tower's unlawful practices also included and continue to include Defendant's ongoing concealment that Sections 10113.71 and 10113.72 apply to a class or classes of life insurance in force on or after January 1, 2013. Defendant continues to conceal and mislead the policyholders and beneficiaries of the existence of a right to a thirty grace notice, a right to a 60 day grace period, a right to an annual designation, as well as the provisions of these statutes that mandate strict compliance with these provisions before any effective lapse or termination occurs. Defendant has failed and continues to fail to explain to the policyholders and beneficiaries that a life insurance policy in force on or after January 1, 2013 cannot be effectively

1   terminated until strict compliance with all provisions of the insurance provisions, and

2   that without such strict compliance the policy remains in force.

3       128.   Moreover, Tower has committed deceptive acts under the UCL by

4   affirmatively and erroneously telling class members, like Plaintiff, that their policies

5   had grace periods of less than 60 days and/or that their policies have lapsed or

6   terminated.  The truth is that the policies had grace periods of at least 60 days and the

7   policies had *not* actually lapsed or terminated.

8       129.   Additionally, at various times prior to and since the denial of Plaintiff's

9   claim, Defendant has misrepresented the true and known facts and have actively

10   misled and continues to mislead their past and current policyholders and beneficiaries

11   concerning the California Department of Insurance public opinion on the application

12   of these statutes. As part of the ongoing conduct of Defendant, Defendant has

13   privately and publically asserted that the California Department of Insurance has in

14   some form of written guideline, rule, regulation, or proper legal opinion, represented

15   that these Statutes do not apply to Ms. Pitt's policy and other policies like it.

16       130.   The true facts are that the California Department of Insurance has done

17   no such thing.   Defendant knows now, and has known since 2012, that the

18   Department of Insurance has not issued any opinions, rules, or regulations which ever

19   said or suggested that these Statutes did not apply.   Despite such knowledge,

20   Defendant continues to conceal the true facts and misrepresent the true facts to its

21   policyholders, beneficiaries, and the general public.

22       131.   The unlawful and unfair business practices described above have

23   proximately caused harm and injuries to Plaintiff, the class and sub-class, and to the

24   general public in the form of lost money.  The money lost by the class includes the

25   policy benefits that Tower is withholding as well as the premiums that it wrongfully

26   collected.

27       132.   Pursuant to California's UCL, Plaintiff, the general public, and the

28   members of the Class are entitled to restitution of the money or property acquired by

Defendant by means of such business practices, in amounts yet unknown, but to be ascertained at trial.  Examples of this lost money acquired illegally by Defendant include un-refunded premiums, withheld benefits, and diminution of value of policies.

133.   In addition, Plaintiff seeks, on behalf of herself and the members of the elder abuse sub-class (i.e. those class members who were 65 or older at the time of the policy lapse/termination), treble remedies pursuant to California Civil Code Section 3345. Full trebling is warranted here because, among other reasons, Defendant knew or should have known that its conduct was directed to one or more senior citizens like Plaintiff.  Also, Defendant's conduct caused one or more senior citizens, including Plaintiff and her fellow sub-class members, to suffer loss of, *e.g.*, a source of income, money or property set aside for retirement or for personal/family care and maintenance, and/or assets essential to the health or welfare of the sub-class member.

134.   Defendant continues to this day to ignore or otherwise violate The Statutes, continuing to rob beneficiaries, like Ms. Pitt, of their lawfully-owned policies and benefits.  As such, and pursuant to California's UCL, Plaintiff and the members of the class and the general public are also entitled to injunctive relief, including public injunctive relief, against Defendant's ongoing business practices.

135.   If Defendant is not enjoined from engaging in the unlawful business practices described above, Plaintiff, the class and sub-class, and the general public will be irreparably injured.

136.   Plaintiff, the general public, and the members of the class and sub-class have no plain, speedy, and adequate remedy at law.

137.   Defendant, if not enjoined by this Court, will continue to engage in the unlawful business practices described above in violation of the UCL, in derogation of the rights of Plaintiff, the class and sub-class, and the general public.

138.   Plaintiff's success in this action will result in the enforcement of important rights affecting the public interest by conferring a significant benefit upon the general public.

139.   Private enforcement of these rights is necessary as no public agency has pursued enforcement and the interests Plaintiff seeks to protect are for the benefit of the general public.  Plaintiff is therefore entitled to an award of attorneys' fees and costs of suit pursuant to, among others, California's UCL, the Common Fund doctrine, the Public Benefit Doctrine, and California Code of Civil Procedure Section 1021.5.

## XIII.  SIXTH CAUSE OF ACTION

**FINANCIAL ELDER ABUSE (CAL WELF. & INST. CODE, § 15610.30)**

**(By Plaintiff, individually and on Behalf of
the Estate of Michael A. Pitt, and the Elder Abuse Sub-Class)**

140.   Plaintiff incorporates by reference each and every allegation contained above.

141.   Plaintiff brings this claim individually as well as in her representative capacity for the Estate of Michael A. Pitt, and also on behalf of all members of the elder abuse sub-class.

142.   By way of its actions described above, Tower has taken, hidden, appropriated, obtained, or retained Plaintiff and her fellow sub-class members' money or property and/or assisted in the taking, hiding, appropriating, obtaining, or retaining of said money or property—namely, the life insurance policies which Tower improperly terminated as well as the benefits associated with those policies and which Tower has withheld and continues to withhold to this day.

143.   Ms. Pitt and her fellow sub-class members were each 65 or older at all relevant times, including at the time of Tower's purported termination of the subject policies as well as at the time Tower should have, but failed to, pay the policy benefits owed.

144.   Tower took, hid, appropriated, obtained, or retained this money or property for a wrongful use or with the intent to defraud Plaintiff and her fellow sub-class members.

145.   Tower knew or should have known that its conduct was likely to be harmful to Plaintiff and her fellow sub-class members.

146.   As a direct result of Tower's acts, Plaintiff and her fellow sub-class members were harmed in amount to be determined at trial.  Tower's conduct was a substantial factor in causing that harm.

147.   Plaintiff thus, on behalf of herself and all other members of the elder abuse sub-class, seeks compensatory damages and all other remedies otherwise provided by law in an amount to be proven at trial, as well as reasonable attorney's fees and costs under California Welfare and Institutions Code Section 15657.5.

148.   Furthermore, Tower, in committing the acts described above, is guilty of recklessness, oppression, fraud, or malice in the commission of the financial abuse thereby entitling Plaintiff and the sub-class to an award of punitive damages.

## XIV.  **PRAYER FOR RELIEF**

Plaintiff prays for relief against Defendant as follows:

1.   For certification of this action as a Class Action;

2.   A declaration of Plaintiff's and the Classes' rights pursuant to the insurance policies issued by Defendant and a declaration that Defendant has violated The Statutes;

3.   For an injunction to issue against Defendant stopping and remedying the ongoing violation of The Statutes, including public injunctive relief;

4.   For economic damages according to proof where available;

5.   Fore restitution where available;

6.   For treble relief under Cal Civ. Code § 3345;

7.   For punitive damages and/or penalties where available;

8.   For interest where available;

9.   For Plaintiff individually only:  additional economic and noneconomic damages, punitive and exemplary damages as a result of Defendant's bad faith;

10.  For attorneys' fees and all litigation costs and expenses where available; and

11.  For such other and further relief as this Court deems just and proper.

## XV.   <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby requests a trial by jury.

Respectfully submitted:

DATED:   April 9, 2020                    **NICHOLAS & TOMASEVIC, LLP**


By:      */s/ Alex Tomasevic*
Craig M. Nicholas (SBN 178444)
Alex Tomasevic (SBN 245598)
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org

**WINTERS & ASSOCIATES**
Jack B. Winters, Jr. (SBN 82998)
Georg M. Capielo (SBN 245491)
Sarah Ball (SBN 292337)
Email: jackbwinters@earthlink.net
Email: gcapielo@einsurelaw.com
Email: sball@einsurelaw.com

Attorneys for Plaintiff SUSAN A. PITT, Individually, as Successor-In-Interest to MICHAEL A. PITT, Decedent, and on behalf of the Estate of MICHAEL A. PITT, and on Behalf of the Class