UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN A. PITT, Individually, as Successor-In-Interest to Michael A. Pitt, Decedent, on Behalf of the Estate of Michael A. Pitt, and on Behalf of the Class,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>METROPOLITAN TOWER LIFE INSURANCE COMPANY,<br><br>　　　　　　　　Defendant. | Case No.: 20-CV-694-RSH-DEB<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>**[ECF No. 46]** |

This Order addresses Plaintiff's motion for class certification, ECF No. 46. Plaintiff moves to certify a class under Federal Rules of Civil Procedure 23(b)(2), (b)(3), and (c)(4). *Id*. at 17-24. As explained below, the motion is DENIED.

**I.　BACKGROUND**

Plaintiff seeks to certify the following class:

> All owners, or beneficiaries upon a death of the insured, of Defendant's individual life insurance policies that were renewed, issued, or delivered by Defendant in California, and in force on or after January 1, 2013, and which Defendant lapsed or terminated for the non-payment of premium without Defendant first providing all the notices, grace

1

> periods, and offers of designation required by Insurance Code Sections 10113.71 and 10113.72.

ECF No. 46-1 at 3.[1]

The provisions cited by the class definition – California Insurance Code Sections 10113.71 and 10113.72 (the "Statutes") – create a "single, unified pretermination notice scheme," *McHugh v. Protective Life Ins. Co.*, 12 Cal. 5th 213, 240 (2021), that imposes several discrete requirements on life insurance companies:

- [1] The "60-Day Grace Period Provision": "Each life insurance policy issued or delivered in this state shall contain a provision for a grace period of not less than 60 days from the premium due date." § 10113.71(a).

- [2] The "Notice Within 30 Days of Nonpayment": The Insurer must provide notice of pending lapse and termination "within 30 days after a premium is due and unpaid." § 10113.72(c); *see also* § 10113.71(b)(3) ("Notice shall be given to the policy owner and to the designee by first-class United States mail within 30 days after a premium is due and unpaid.").

- [3] The "Notice At Least 30 Days Before Effective Date of Termination": The insurer must provide notice of pending lapse and termination at least 30 days prior to the effective date of lapse or termination. §§ 10113.71(b)(1) ("A notice of pending lapse and termination of a life insurance policy shall not be effective unless mailed by the insurer . . . at least 30 days prior to the effective date of termination if termination is for nonpayment of premium."); 10113.72(c) ("No individual life insurance policy shall lapse or be terminated for nonpayment of premium unless the insurer, at least 30 days prior to the effective date of the lapse or termination, gives notice . . . .").

---

[1] This Order cites pleadings and declarations by paragraph number, the parties' briefs by the page numbers contained in the briefs, and other exhibits with reference to the court-stamped (*i.e.*, ECF) page number at the top of each page.

- [4] The "Third-Party Designation Notice": "An individual life insurance policy shall not be issued or delivered in this state until the applicant has been given the right to designate at least one person, in addition to the applicant, to receive notice of lapse or termination of a policy for nonpayment of premium." § 10113.72(a). The insurer must provide an insurance applicant with a "form to make the designation," *id*., and "notify the policy owner annually of the right to change the written designation or designate one or more persons," § 10113.72(b).

The Statutes went into effect on January 1, 2013. The California Supreme Court recently held that the Statutes "apply to all life insurance policies in force when these two sections went into effect, regardless of when the policies were originally issued." *McHugh*, 12 Cal. 5th at 220. For example, if a life insurance policy was issued in 1999, but was in effect on January 1, 2013, the Statutes would apply to that policy.

A.   MICHAEL PITT'S POLICY FROM TOWER

In October 2003, while living in Illinois, Michael Pitt purchased a $2 million term life insurance policy (the "Policy") from Metropolitan Tower Life Insurance Company ("Tower"). ECF No. 1 ¶ 35. The Policy required Mr. Pitt to pay a fixed annual premium of $7,290 during a "Guaranteed Level Premium Period" of 20 years, after which time they would rise dramatically. ECF No. 1-2 at 3-4.

This, of course, was a decade before the Statutes went into effect in California. The Policy language did not expressly contain [1] the 60-Day Grace Period Provision. *See* ECF No. 1-2 at 5 (providing for "a grace period of 31 days after the premium due date"). Nor was the Policy preceded by a [4] Third-Party Designation Notice. Indeed, Tower did not at any point thereafter provide such a notice.[2]

---

[2]   *See* ECF No. 76-2 at 15 (Plaintiff's declaration that Tower never advised her or decedent of their right to designate); ECF No. 80 at 6 (Tower brief admitting that "Mr. Pitt did not receive the opportunity to designate").

In 2014, Mr. Pitt and his wife, Plaintiff Susan Pitt, moved from Illinois to California. ECF No. 46-4 at ¶ 4 (Decl. of Susan Pitt). They notified Tower of their change of address and continued to pay premiums. *Id.*

According to Tower, Mr. Pitt missed his quarterly premium payment due on January 6, 2016. ECF No. 53-1 at 6-7. On February 8, 2016, Tower sent Mr. Pitt a notice, styled as a "Special Courtesy Offer." ECF No. 53-2 at 61. The notice stated that "YOUR GRACE PERIOD HAS EXPIRED," and told Mr. Pitt that "[y]our policy will remain in force if you pay the overdue amount shown on the front of this notice. If payment is made on or before the offer expires, you will not be required to apply for reinstatement." *Id.* The notice stated, "THIS OFFER EXPIRES 2/27/2016." *Id.*

In September 2016, Mr. Pitt applied for reinstatement and tendered the full annual premium amount of $7,290. ECF No. 46-4 ¶ 8. In February 2017, Tower rejected Mr. Pitt's reinstatement application. *Id*.

In May 2018, Michael Pitt passed away. ECF No. 76-2 ¶ 9. In August 2018, Plaintiff Susan Pitt, the named beneficiary under the Policy, filed a claim with Tower for death benefits. ECF No. 53-2 at 81-82. Tower denied her claim. *Id*. at 4-5 ¶ 21; 85.

**B.    THE PUTATIVE CLASS**

Plaintiff's putative class includes 5,041 individuals with Tower life insurance policies that were in force as of January 1, 2013 (the effective date of the Statutes), but that Tower thereafter lapsed and terminated based on nonpayment of premiums. ECF No. 46-1 at 3, 11-12, 22. This includes four different types of life insurance policies: (1) universal, (2) variable universal, (3) whole, and (4) term life insurance policies.[3] ECF No. 58 ¶ 7. Plaintiff's Policy was a term life policy.

---

[3]    In a Tower universal life policy, policyholders decide when and how much premium to pay. Premiums are paid into a "contract fund," which earns interest. To keep the policy in force, the policyholder must pay sufficient premiums such that the contract fund covers the required monthly deductions paid to Tower in accordance with the policy. A Tower variable universal life policy is similar to a universal life policy, but instead of a set interest

## II. LEGAL STANDARD

Before certifying a class, the Court must be "satisfied, after a rigorous analysis" that the prerequisites of Rule 23(a) and (b) are satisfied. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663 (9th Cir. 2022). Plaintiffs seeking class certification "must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23 . . . ." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014). "[P]laintiffs must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence." *Olean*, 31 F.4th at 664.

The Court may certify a class "only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(1)-(4).

Additionally, "plaintiffs must show that the class fits into one of three categories" under Rule 23(b). *Olean*, 31 F.4th at 663. Under Rule 23(b)(2), a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Under Rule 23(b)(3), the Court may also certify a class if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the

---

rate, the policyholder can invest contract funds into a preferred investment option. In a Tower whole life insurance policy, the policyholder pays specific, periodic premiums until a specified premium-paying period, death of the insured, or cancellation / surrender of the policy. Finally, in a Tower term life insurance policy, premiums are fixed for a specified number of years (*e.g.*, 10 or 20 years), after which premiums increase, sometimes dramatically, according to a schedule in the policy. ECF No. 58 ¶ 7.

controversy." In considering a class action under Rule 23(b)(3), the Court should consider "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D).

## III. DISCUSSION

Defendant does not dispute that Plaintiff has satisfied the first two of the four requirements of Rule 23(a), numerosity and commonality; but contends that Plaintiff has not established typicality or adequacy. Defendant also disputes that certification is appropriate under Rule 23(b)(2), which applies to a class seeking injunctive or declaratory relief. Defendant further contends that Plaintiff has not established that common issues predominate over individual issues, as required by Rule 23(b)(3). Plaintiff asks in the alternative for certification of an issues class under Rule 23(c)(4).

### A. 23(a) Requirements

#### 1. *Numerosity*

A class may only be certified if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw. v. Equal Emp. Opportunity Comm'n*, 446 U.S. 318, 330 (1980). Here, the proposed class consists of over 5,000 class members. ECF No. 46-1 at 22. Defendant Tower does not dispute that the class is sufficiently numerous. The Court therefore finds that numerosity is satisfied. *See, e.g.*, *Jordan v. Los Angeles Cnty.*, 669 F.2d 1311, 1319 (9th Cir.) (noting in dicta that court "would be inclined to find the numerosity requirement . . . satisfied solely on the basis of the number of ascertained class members, i.e., 39, 64, and 71 . . . ."); *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000) ("[O]ther District Courts have, however, enacted presumptions that the numerosity requirement is satisfied by a showing of 25-30 members.").

### 2. *Commonality*

Certification is only appropriate if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). The class members' "claims must depend upon a common contention . . . [and t]hat common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. Plaintiff identifies the common legal question of whether the Statues apply to Tower's policies in effect on or after 2013. ECF No. 46-1 at 12. Tower does not dispute the commonality requirement. The Court concludes that commonality is satisfied. *Wal-Mart*, 564 U.S. at 359 ("We quite agree that for purposes of Rule 23(a)(2) [e]ven a single [common] question will do.") (internal quotation marks omitted).

### 3. *Typicality*

Plaintiff may bring claims on behalf of a class, only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon*, 976 F.2d at 508. "[C]lass certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.' *Id.* (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir.1990)). "[R]epresentative claims are 'typical' if they are reasonably coextensive with those of absent class members; they

need not be substantially identical." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

Plaintiff contends that her claims are typical because "[e]very class member has the same complaint," and "is in danger of losing, or has already lost the same valuable thing: payment of policy benefits or a right to continue their insurance under the terms promised." ECF No. 46-1 at 15. Tower argues that Plaintiff's factual circumstances are atypical: the Policy was issued and delivered in Illinois, not California; Mr. Pitt is deceased, while the vast majority of class insureds are still alive; the Policy is a term policy, but there are three other types of policies in the class, involving differing provisions; and unlike Plaintiff, other class members may have chosen to terminate their policies, or let their policies lapse, or to timely reinstate their policies. ECF No. 56 at 25-26. Tower also contends that Plaintiff is subject to the unique defense of statute of limitations; and that other absent class members may be subject to atypical defenses of waiver, ratification, and failure to mitigate. *Id*. at 26-27.

The Court concludes that typicality is not satisfied here. As discussed further below in the Court's discussion regarding predominance, *infra* Section III.B., there is a lack of common evidence as to Tower's compliance with the Statutes, requiring individualized inquiries regarding the terms of each class policy and the timing of the notices Tower provided. Given the diversity within the putative class and Defendant's varying practices and conduct with respect to each unnamed class member, Plaintiff's claims are atypical. *See, e.g.*, *In re Paxil Litig.*, 212 F.R.D. 539, 550 (C.D. Cal. 2003) (finding named representative atypical in light of "differences among plaintiffs that result from differing factual circumstances"); *Gardner v. Health Net, Inc.*, No. CV 10-2140, 2010 WL 11579028, at *3 (C.D. Cal. Sept. 13, 2010) ("[T]he typicality requirement is not met in an action that would require individualized inquiries regarding causation and injury."); *Carr v. Int'l Game Tech.*, No. 3:09-CV-00584-RCJ, 2013 WL 638834, at *3 (D. Nev. Feb. 20, 2013) (rejecting reconsideration of order denying class certification where plaintiffs failed to establish typicality "because the communications claim will require individualized

analysis of each putative class member's detrimental reliance on the alleged misrepresentations").

Plaintiff may also be subject to the unique defense that Mr. Pitt's Policy was issued and delivered outside of California, and was therefore beyond the reach of the Statutes.[4] *See, e.g.*, *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (vacating certification order where district court failed to consider individualized defenses when assessing typicality); *Navellier v. Sletten*, 262 F.3d 923, 941 (9th Cir. 2001) (affirming denial of class certification where plaintiff was atypical and "subject to unique defenses").

Finally, Tower claims that 97% of the putative class involves policies with living insureds – a fact that Tower does not seem to support but that Plaintiff nowhere disputes. ECF No. 56 at 2, 6-7, 24, 28. If true, Plaintiff is not typical of the vast majority of the class, for whom questions of causation and damages are necessarily different in nature. *See, e.g.*, *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (vacating certification order where named plaintiffs did not suffer from one of the most serious harms alleged and therefore "suffered different injuries").

The Court's ruling on the typicality element is not alone dispositive of Plaintiff's class certification motion. As discussed *infra*, Sections III.B-D, Plaintiff's failure to demonstrate her entitlement to certification under Rules 23(b)(3), (b)(2), or (c)(4) is independently sufficient to deny the motion.

### 4. *Adequacy*

A class action may be certified only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Class representation is inadequate if the named plaintiff fails to prosecute the action vigorously on behalf of the

---

[4] At least one court has found the Statutes do not apply extraterritorially to policies issued or delivered outside of California. *Elmore v. Hartford Life & Accident Ins. Co.*, No. CV 18-8903-CJC (JCx), 2020 WL 1276106, at *4 (C.D. Cal. Jan. 6, 2020); *see Elmore*, No. 20-55118 (9th Cir.), ECF Nos. 26, 34 (raising arguments regarding extraterritoriality on appeal).

20-CV-694-RSH-DEB

entire class or has an insurmountable conflict of interest with other class members." *Hesse v. Sprint Corp.*, 598 F.3d 581, 589 (9th Cir. 2010). The Court finds that Plaintiff is an adequate representative. Tower nowhere argues that Plaintiff's counsel is incompetent or that Plaintiff is subject to unavoidable conflicts of interest. Instead, Tower aggregates its typicality and adequacy arguments, pointing out the differences in the claims and defenses between Plaintiff and the putative class. ECF No. 56 at 25-27. But none of the cases cited by Tower, *id.*, indicates that those differences are by themselves sufficient to render Plaintiff inadequate to represent the class.

### B.  Predominance Under Rule 23(b)(3)

The Court begins with the predominance inquiry under Rule 23(b)(3). "While Rule 23(a)(2) asks whether there are issues common to the class, Rule 23(b)(3) asks whether these common questions predominate. Though there is substantial overlap between the two tests, the 23(b)(3) test is 'far more demanding' . . . and asks 'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (internal citations omitted). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Wal-Mart*, 564 U.S. at 350 (citation omitted). The predominance factor is not met where "non-common, aggregation-defeating, individual issues" are more prevalent or important than "common, aggregation-enabling, issues in the case." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). An individual issue is one where "members of a proposed class will need to present evidence that varies from member to member." *Id.* (citation omitted).

The Court first considers the common issues. Plaintiff's brief begins: "This case is ideal for class certification because it presents a binary legal question applicable to thousands of California consumers: Do the protections of insurance code sections 10113.71

and 10113.72 apply to Defendant's insurance policies originally issued before 1/1/2013?" ECF No. 46-1 at 1. Similarly, Plaintiff later asserts that "[t]he most important issue in this case, i.e., the predominant one, can be resolved in one stroke: whether the Statutes apply to Tower's policies issued before 2013, which were still in force thereafter." ECF No. 46-1 at 4. Plaintiff further states, however, that this binary and predominant issue *has already been resolved* by the California Supreme Court in *McHugh*, *id.* at 1, which held that "sections 10113.71 and 10113.72 apply to all life insurance policies in force when these two sections went into effect, regardless of when the policies were originally issued." *McHugh*, 12 Cal. 5th at 220. Plaintiff seemingly seeks to certify a class in order to address a question of law that, although it may be common to the class members, has already been decided.

The real question, of course, is what happens next in the analysis. Given that the Statutes apply to life insurance policies that were in force when the Statutes went into effect, did Tower violate those Statutes? If so, does Plaintiff – and do other Tower policyholders in California – have a valid claim for breach of contract? And would a class action generate common answers to these questions that would predominate over individualized inquires?

Plaintiff offers several categories of "common evidence" that she contends will establish certain facts on a class-wide basis. ECF No. 46-1 at 21-22. First, Plaintiff states that "[a]s a matter of policy, Tower did not apply the Statutes to those policies because it interpreted the law incorrectly." ECF No. 46-1 at 21. Plaintiff relies on the following testimony from Defendant's 30(b)(6) representative, Deborah O'Donnell:

> Q. Saying your testimony is that Met Tower made the decision that it did not have to comply with the statutes in – to policies that it was managing issued prior to 2013, correct?
>
> A. Correct.

ECF No. 46-2 at 21; *see also* ECF No. 46-1 at 1. Plaintiff's theory is that, because Tower took the legal interpretation "that it did not have to comply" with the Statutes for policies

issued prior to 2013 – an interpretation that was ultimately rejected by the California Supreme Court in 2021 in *McHugh* – this means that "every single class member . . . share[s] a common harm: improper termination of their Tower policy." ECF No. 46-1 at 1. However, the fact that Tower took the legal position that the Statutes did not apply to policies issued prior to 2013 does not, without more, lead to the conclusion that Tower indeed violated those Statutes as to all policies issued prior to 2013.

Second, referring to term policies only (among the four types of policies held by the putative class members), Plaintiff states that "*no* term policy issued before 2013 contained a 60-day grace period as the Statutes require," citing ambiguous testimony from O'Donnell. ECF No. 46-1 at 21. Plaintiff therefore contends that every Tower *term* policy issued before 2013 violated the [1] 60-Day Grace Period Provision requirement.

Third, Plaintiff states that "Tower did not start sending appropriate lapse notices for *any* policies, within 30 days of any missed premium, until after Plaintiff filed her lawsuit." *Id.* Plaintiff relies on O'Donnell's testimony that for *term* policies, Tower's "admin system" would send a notice that a premium is due before the due date of the premium; and then, if the premium was unpaid, "we would generate a notice approximately 31 days later." ECF No. 46-2 at 14. In other words, Plaintiff argues, in the ordinary course Tower would fail to comply with the [2] Notice Within 30 Days of Nonpayment requirement. The most clear testimony on which Plaintiff relies is limited to term policies. ECF No. 46-1 at 21, No. 46-2 at 14.[5]

Finally, Plaintiff states that "Tower failed to provide required third-party designation rights." ECF No. 46-1 at 22. Plaintiff relies on testimony from Tower's representative that *prior to 2013*, in California, Tower did not provide third-party designation rights. ECF No.

---

[5] Plaintiff also cites other testimony from Tower's representative that beginning in 2019, for California residents the overdue payment notice was generated on the 25th day after the payment due date; before then, the notice had been generated on the 31st day. ECF No. 46-1 at 22, No. 46-2 at 23. It is not clear from the excerpt whether this testimony applies to all types of Tower policies, or only term policies.

46-2 at 16, 19. Plaintiff argues that Defendant thereby failed to comply with the requirement of [4] Third-Party Designation Notice on a class-wide basis.

Plaintiff does not appear to offer "common evidence" that Tower violated the requirement of [3] Notice At Least 30 Days Before Effective Date of Termination. ECF No. 46-1 at 22.

As offered by Plaintiff, there are large gaps in Plaintiff's purported common evidence relating to the putative class of holders of policies "in force on or after January 1, 2013 . . . which Defendant lapsed or terminated for the non-payment of premium without Defendant first providing *all* the notices, grace periods, and offers of designation required by [the Statutes]" (emphasis added).

Underscoring these gaps, Defendant submits a separate declaration from O'Donnell. According to her, the putative class contains "many different types of life insurance policies, with different structures, different contract provisions regarding grace period and lapse, and as to which different notices were sent." ECF No. 58 ¶ 6. With regard to the requirement of a [1] 60-Day Grace Period Provision, O'Donnell states that Tower's universal and variable universal life policies expressly provide for at least a 60-day grace period. *Id*. ¶ 14. Of the 5,041 policies at issue, over half of them (2,590 policies) are universal life and variable life policies that contained such an express grace period. *Id.* at ¶ 16.[6] For the requirement of [2] Notice Within 30 Days of Nonpayment, O'Donnell states that beginning in 2019, Tower began sending notice of nonpayment 25 days (as opposed to 31 days) after the premium due date for term and whole life policies in California. ECF No. 58 ¶ 36(b). Finally, for the requirement of [4] Third-Party Designation Notice, O'Donnell states that "[b]eginning in July 2014, Tower sent Third-Party Notification forms

---

[6]   O'Donnell also states that, "[a]lthough most of Tower's Term Life policies have a contractual 31-day grace period," as a matter of Tower practice, "these policies are not terminated for failure to pay premium at any time prior to 60 days following the last premium due date." ECF No. 58. ¶ 17

to all owners of policies issued or delivered in California providing them an opportunity to designate a Secondary Notice Recipient." *Id*. ¶ 42.

Given the foregoing evidence offered from both parties, the Court concludes that individual issues would predominate at trial, including, for each class member: (1) the terms of the Tower policy; (2) the timing of any notice that Tower provided of a missed payment; (3) the timing of any notice of lapse or termination; and (4) the timing of any notice of third-party designation rights. Some of these issues *may* be susceptible to some form of common proof – but not as to the entire putative class, and instead based on the type of policy and the year the policy was issued.

These issues discussed above would be necessary, but not sufficient, to determine liability. Violation of one of the several requirements contained in the Statutes does not by itself establish all the elements of a claim for breach of contract. For example, Defendant offered evidence that one policyholder in the putative class called Tower expressly to indicate her plan to cancel the policy. ECF No. 56 at 5; ECF No. 60-4 at 14. Defendant claims that another policyholder told Defendant that because the policyholder's spouse had died, the policyholder no longer wished to continue coverage. ECF No. 56 at 5. In such situations, the termination of the policy might be due to the policyholder's request rather than to nonpayment of premiums; or Defendant's performance under the contract might be excused.

Additionally, to establish liability for breach of contract, a plaintiff must prove damages resulting from the defendant's breach. Here, Defendant asserts that of the 5,041 putative class members, more than 4,900 – or 97% – are still alive. ECF No. 56 at 23. Defendant fails to identify the precise evidentiary basis for this statement, but Plaintiff does not dispute or question it, or provide an alternative estimate. For those living members of the putative class, the assessment of whether those individuals suffered damages as a result of the alleged breaches of contract will likewise be individualized.

In *Moriarty v. American General Life Insurance Co.*, No. 17-cv-1709-BTM-WVG, 2020 WL 6938388 (S.D. Cal. Nov. 25, 2020), the district court addressed a similar putative

class action against an insurance company, alleging violation of the Statutes. In that case, the district court denied class certification without prejudice pending the California Supreme Court's ruling in *McHugh*, and the potential effect of that ruling on the putative class action. *Id.* at *2. Although denying the motion without prejudice, the district court "note[d] its concerns about the number of factual issues that may need to be tried for each potential class member." *Id.* The Court explained:

> For example, in Plaintiff's case, some of the remaining individual factual issues that will need to be tried include: (1) whether American General properly mailed Mr. Moriarty and Plaintiff a notice of termination letter, and whether Mr. Moriarty or Plaintiff received such a letter, (2) whether American General imposing an effective termination date fewer than 30 days after it mailed the notice of termination letter actually caused damage to Plaintiff, (3) whether Plaintiff had actual notice of a lapsed policy payment, and (4) whether Plaintiff would have been Mr. Moriarty's § 10113.72 designee. Similar individual factual issues will likely be present for each member of the putative class . . . .

*Id.* Some similar individual issues – including relating to the timing of notice, as well as causation and damages – exist here.

In conclusion, Plaintiff has not met her burden to establish that, were her putative class to be certified, common issues would predominate over individual issues.

### C. Class for Injunctive or Declaratory Relief Under Rule 23(b)(2)

The Court may certify a class pursuant to Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Plaintiff's claims for injunctive or declaratory relief do not support certification under Rule 23(b)(2) here.

The Complaint seeks "an injunction . . . against Defendant stopping and remedying the ongoing violation of The Statutes, including public injunctive relief." ECF No. 1 at 40. In order to obtain a permanent injunction, Plaintiff must prove: "(1) that [she] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are

inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Additionally, a "plaintiff must demonstrate a likelihood of irreparable harm as a prerequisite for injunctive relief, whether preliminary or permanent." *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 998 (9th Cir. 2011).

"Class certification under Rule 23(b)(2) is appropriate *only* where the primary relief sought is declaratory or injunctive." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1195 (9th Cir. 2001) (citing *Nelsen v. King County*, 895 F.2d 1248, 1254-55 (9th Cir.1990)) (emphasis added). Here, the primary relief Plaintiff seeks is damages, namely, the amount payable under her insurance policy. ECF No. 1 at ¶¶ 108-09, 111. Plaintiff does not allege that the damages she seeks to recover would constitute an inadequate remedy; nor has she demonstrated irreparable injury to her. She has not made a showing of entitlement to injunctive relief sufficient to allow her to represent a class. *See Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) (en banc) ("Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief."); *see also Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) ("Standing must be shown with respect to each form of relief sought, whether it be injunctive relief, damages or civil penalties."); *In re First Am. Home Buyers Protection Corp. Class Action Litig.*, 313 F.R.D. 578, 611-12 ("The fact that the named Plaintiffs previously purchased First American plans and may bring a claim for damages therefore does not in itself grant them standing to seek injunctive relief.").

Plaintiff's claim for declaratory relief is likewise not a basis for certification of a Rule 23(b)(2) class. Plaintiff seeks a declaratory judgment that "Sections 10113.71 and 10113.72 applied as of January 1, 2013, to Defendant's California policies in force as of or at any time after January 1, 2013, including [Plaintiff's] Policy." ECF No. 1 ¶¶ 92, 98. Declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in

clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Guerra v. Sutton*, 783 F.2d 1371, 1376 (9th Cir. 1986) (internal quotation marks omitted). In contrast, "[d]eclaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985).

"[W]here determinations of a breach of contract claim will resolve any question regarding interpretation of the contract, there is no need for declaratory relief, and dismissal of a companion declaratory relief claim is appropriate." *Vascular Imaging Pros., Inc. v. Digirad Corp.*, 401 F. Supp. 3d 1005, 1010 (S.D. Cal. 2019). *See also United Safeguard Distribs. Ass'n, Inc. v. Safeguard Bus. Sys., Inc.*, 145 F. Supp. 3d 932, 961 (C.D. Cal. 2015) (dismissing declaratory relief claim where it was "nothing more than a duplication of [plaintiffs'] breach of contract claim"); *BASF Corp. v. ENS, Inc.*, No. 22-cv-577, 2022 WL 16973248, at *4 (C.D. Cal. Nov. 16, 2022) ("The requested judicial declaration is duplicative of BASF's breach of contract claim, which will afford BASF full relief, and therefore declaratory relief is inappropriate."). Such is the case here. Plaintiff's claims for declaratory relief are duplicative of her breach of contract claim. A declaratory judgment would serve no useful purpose in clarifying legal issues that will be resolved in connection with Plaintiff's other claims.

Furthermore, to the extent Plaintiff is seeking a judgment that "Sections 10113.71 and 10113.72 applied as of January 1, 2013, to Defendant's California policies in force as of or at any time after January 1, 2013," ECF No. 1 ¶¶ 92, 98, that issue was decided by the California Supreme Court in *McHugh*, 12 Cal.5th at 220: "We conclude that sections 10113.71 and 10113.72 apply to all life insurance policies in force when these two sections went into effect, regardless of when the policies were originally issued." This renders Plaintiff's request for declaratory relief moot. *See Moriarty v. Am. Gen. Life Ins. Co.*, No. 3:17-CV-1709-BTM-WVG, 2022 WL 2959560, at *4 (S.D. Cal. July 26, 2022) (rejecting

similar declaratory judgment claim as moot in light of *McHugh*); *Antoninetti v. Chipotle Mexican Grill, Inc.*, No. 06-CV-2671-BTM-WMC, 2012 WL 3762440, at *2-4 (S.D. Cal. Aug. 28, 2022) (finding claim for declaratory relief moot after issuance of binding Ninth Circuit precedent, and denying class certification). Because Plaintiff is not entitled to declaratory relief, she may not represent a class seeking that relief. *See Bates*, 511 F.3d at 985; *see also Algarin v. Maybelline, LLC*, 300 F.R.D. 444 (S.D. Cal. 2014).

### D. Certification of a Legal Issues Class Under Rule 23(c)(4)

Plaintiff also states, "[a]s an alternative to certification of this entire class as defined under Rule 23(b)(2) or 23(b)(3), the Court could merely certify the legal issue of whether the Statutes apply to Tower's California life insurance policies issued prior to January 2013, under Rule 23(c)(4)." ECF No. 46-1 at 25.

Plaintiff's suggestion that the Court "certify [a] legal issue" in lieu of certification of the "entire class" does not make sense. Rule 23(c)(4), which Plaintiff invokes, provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). "Certification of an issues class under Rule 23(c)(4) is appropriate only if it materially advances the disposition of the litigation as a whole." *Rahman v. Mott's LLP*, 693 F. App'x 578, 580 (9th Cir. 2017) (citations and internal quotation marks omitted). To the extent that Plaintiff is proposing a Rule 23(c)(4) *class*, the scope of that proposed class is unclear, and Plaintiff has failed to establish that such a certification would materially advance the disposition of the litigation. Additionally, the issue that Plaintiff identifies has already been decided by *McHugh*, 12 Cal.5th at 220. The Court declines Plaintiff's alternative proposal.

//
//
//
//
//
//

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for class certification ECF No. 46, is **DENIED**.

**IT IS SO ORDERED**.

Dated: December 1, 2022

_____
Hon. Robert S. Huie
United States District Judge